**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| PARAMOUNT RESIDENTIAL MORTGAGE GROUP, INC. 1265 Corona Pointe Court, Suite 300 Corona, California 92879, | : : : : : | CIVIL ACTION |
| Plaintiff, | : : | Case No. |
| v. | : : | |
| NATIONWIDE MORTGAGE BANKERS, INC. 310A Main Street, Lebanon, New Jersey 08833, | : : : : | |
| Defendant. | : : : | |

**COMPLAINT**

Plaintiff Paramount Residential Mortgage Group, Inc. ("PRMG" or "Plaintiff"), by and through its attorneys, Fisher & Phillips LLP, by way of Complaint seeking permanent injunctive relief and damages against Defendant Nationwide Mortgage Bankers, Inc. ("NMB" or "Defendant"), states and alleges the following:

**INTRODUCTION**

1.     On its website, NMB describes its recent growth and success in hyperbolic terms:



**We are the Fastest Growing Mortgage Company in the Country!**

In 2019 NMB made its debut on the Inc 5000 list of fastest-growing private companies in the United States, Ranking No. 51 with over 5000% growth from 2016 to 2019. In 2020 we jumped 45 spots to No. 8 with over 16,000% growth from 2017 to 2020. The list represents a unique look at the most successful companies within the American economy's most dynamic segment, its independent small businesses. Intuit, Zappos, Under Armour, Microsoft, Patagonia, and other well-known names gained their first national exposure as honorees on the Inc. 5000. NMB is also the number 1 fastest growing mortgage company in the US for two years in a row.

While such growth sounds unattainable, NMB's path to success is simple: NMB steals from its competition, and this is exactly what NMB has done to PRMG. In this case, PRMG seeks to hold NMB accountable for its raid and misappropriation of PRMG's employees and trade secrets.

2.      PRMG is a leading lender, providing mortgage products to customers in nearly every state through its 282 branch offices located around the country.  PRMG is a direct competitor of NMB.  As such, it is a natural target to fuel NMB's unprecedented "growth."

3.       In a single day, **NMB executed an unlawful raid of thirty-five (35) PRMG employees** that was coordinated to steal not only the employees, but also the branch offices they operated, the confidential and trade secret information they had access to, the customers they serviced, and, ultimately, the profits they generated.

4.      In a matter of days during the middle of May 2022, NMB hired a total of forty-one (41) PRMG employees: Bob Wampler ("Wampler"), Joe Heister ("Heister"),

2

Jay Perez, Johanna Perez, Jennifer Givens, Chhabi Lamgadey, Mikim Phan, Richard Schultz, Surya Chhetri, Tika Upreti, Chad Dowdey, Kara Snyder, Narayan Bharati, Katie Smith, Vola Siwakoti, Maddie Heister, Meghan Heister, Pushkar Mangraty, Brent Phillips, Leslie Penate, Cory Johnson, Ja Salaam, Gerry Zagone, Shusil Regmi, Rob Heflin, Tracy Cecil, Nancy Terry, Frank Cecil, Adrian Tucker, Khem Rizal, John Syroka, Emily Johnson, Tatum Wessling, Jamie Warner, Avhinav Adhikari, Lorie Carter, Dana Clayton, Tika Siwakoti, Laura Horacek, Audra Bargy, and Jessica Lay (collectively, the "Former PRMG Employees")—worked in offices spread across five states and included Branch Managers, Business Development Managers, Loan Officers, and Underwriters. All told, the Former PRMG Employees were responsible for over $260 million in annual loans that generated over $3 million in revenue on an annual basis.

5.     Five days after the execution of NMB's unlawful raid began, PRMG demanded that NMB's misconduct end.  NMB ignored the demand and continued its hiring spree, stealing more employees from PRMG offices in Ohio and Florida.  Even after NMB finally got around to responding, it continued to recruit away PRMG employees—including more than a dozen from a single PRMG office in Miami, Florida. Hereinafter, these additional employees lured away from PRMG by NMB will be included among the dozens of others already referred to as Former PRMG Employees. Thus, upon information and belief, NMB is not done and will continue raiding PRMG's talent unless stopped by this lawsuit and this Court.

6.     NMB conducted its raid with the full knowledge that the Former PRMG Employees owed legal and contractual obligations to PRMG both during and after their employment with PRMG.   Nonetheless, NMB provided substantial support and assistance to the Former PRMG Employees to violate those obligations by soliciting PRMG employees, misappropriating PRMG's confidential and trade secret information, and diverting current and prospective PRMG customers to NMB, all for its own benefit and to the detriment of PRMG.

## PARTIES, JURISDICTION, AND VENUE

7.     Plaintiff PRMG is a corporation organized under the laws of the State of California and with its principal place of business at 1265 Corona Pointe Court, No. 300, Corona, California 92879.

8.     Defendant NMB is a corporation organized under the laws of the State of Delaware and with its principal place of business at 310A Main Street, Lebanon, New Jersey 08833.   NMB has branch offices in nearly one dozen states, and is a direct competitor of PRMG.

9.     The claims asserted by PRMG in this Complaint involve NMB's raiding of PRMG Branch Managers, Business Development Managers, Loan Officers, and other key employees in PRMG's offices in Florida, Ohio, Indiana, Kentucky and Michigan. NMB organized this sweeping raid from its corporate headquarters in New Jersey.

10.     This Court has federal question jurisdiction pursuant to 28 U.S.C. §1331, because this action includes claims arising under the laws of the United States.

4

11.     The claims arise under the following laws of the United States, either one of which would be an adequate, independent basis for federal question jurisdiction as a matter of law: 18 U.S.C. §1030 and 18 U.S.C. §1836, *et seq*.

12.     The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. §1367 over state law claims.

13.     The Court also has diversity jurisdiction under 28 U.S.C. §1332, because there is complete diversity of citizenship and the matter in controversy exceeds the sum or value of Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs. Injunctive relief is also sought.

14.     Venue in this Court is appropriate under 28 U.S.C. §1391, because NMB maintains its principal place of business as well as multiple offices in this District, and a substantial part of the events or omissions giving rise to the claims herein occurred in this District.

## STATEMENT OF FACTS

### I.     PRMG's Core Business

15.     PRMG is in the business of making home mortgage and home equity loans. This includes both original and refinanced mortgages.  This is PRMG's "Core Business."

16.     The Core Business is conducted through PRMG's employees, who work in PRMG's two hundred and eighty-two offices nationwide.

FP 44441864.2

17.   In order to obtain loans from PRMG, customers, applicants, and borrowers must provide PRMG with their private, personal financial information. Such information includes, and is not limited to their:

- Credit and FICO scores; and
- Banking history and information; and
- Retirement accounts; and
- Savings and checking accounts; and
- Investment and brokerage accounts; and
- Real estate and other investment assets; and
- Net worth; and
- Tax returns and related documentation and filings; and
- Personal debt, credit cards, loans and other financial relationships; and
- Work and income history; and
- Current employment; and
- Current wage, salary and compensation; and
- All of the above information for co-borrowers or -signers.

(Hereinafter referred to as "Personal Financial Information.")

18.   In some instances, PRMG's customers, applicants, and borrowers authorize PRMG to pull their credit reports so that PRMG can timely process mortgage loan applications or close on customers' mortgages.

19.   This Personal Financial Information is used by PRMG in its Core Business to determine the creditworthiness of its customers, applicants, and borrowers and to assess the appropriate amount or size of a loan.

20.   Customers, applicants, and borrowers cannot obtain a loan from PRMG without providing some or all of their Personal Financial Information to PRMG for its analysis and, conversely, PRMG is unable to properly service its customers, borrowers, and applicants without performing regular analyses of Personal Financial Information.

21.     Customers, applicants, and borrowers expect that when they provide PRMG with their Personal Financial Information, it will be safeguarded and protected and used only by PRMG to help provide a loan.

## II.     <u>The Importance of Confidential Information in PRMG's Core Business</u>

22.     To successfully operate PRMG's Core Business, PRMG relies upon and uses confidential and proprietary information and trade secrets ("Confidential Information").

23.     This Confidential Information includes, but is not limited to, the following data and, importantly, PRMG's proprietary analyses, spreadsheets, compilations, and databases of these data:

- Personal Financial Information; and
- PRMG vendor accounts, account numbers and account access passwords and codes; and
- Information regarding the strengths, weaknesses, historic and trending productivity, proper incentivization and compensation history of PRMG employees in the same offices and region; and
- The price and value of real estate sought by customers, applicants and borrowers; and
- The loan-to-value ratios of properties; and
- The names of PRMG's customers and their contact coordinates; and
- Information concerning PRMG's employees including, but not limited to, salaries, benefits, hours worked, schedules and terms of employment; and
- Marketing, financial and business data, reports, spreadsheets and presentations; and
- Operating, capital and budgeting information; and
- Combinations of operating policies and procedures that are the result of strategic planning by PRMG; and
- The use of computer systems and technologies that enable PRMG's employees to access electronically stored information ("ESI") through networked and remote computers; and

- Information regarding business development opportunities explored, applied for, pursued, negotiated and considered by PRMG.

24.     This Confidential Information is used by PRMG's employees to effectively and efficiently communicate with other PRMG employees, customers, applicants, and borrowers; to market to them; to complete and process their applications for mortgages, refinances, and other loan products; and to facilitate loan closings.

25.     This Confidential Information also enables PRMG's Executives and Branch Managers, including Heister and Wampler, to recruit, retain and effectively performance manage PRMG's Loan Officers.

26.     PRMG's Confidential Information exists (a) in hard copy format that resides in files in PRMG's secured offices, and (b) in ESI format that resides in PRMG's secure computers and related information technology systems. PRMG has gone to great lengths and invested time and money to develop and maintain its Confidential Information and to protect its secrecy.

27.     Heister and Wampler, as well as several Former PRMG Employees whom they recruited to NMB, were assigned PRMG-owned computers and/or given access to PRMG's computer systems in order to perform their duties at PRMG. Some Former PRMG Employees used their private, personal computers in order to conduct work at PRMG and access PRMG's secure information technology systems.

28.     These computers and computer systems were password-protected in order to safeguard access to the Confidential Information residing on the computer and the servers, network, and other company databases accessible through the computer.

8

29.     These computers, servers, network and related information technology systems are not available and cannot be accessed by PRMG's competitors, like NMB.

30.     PRMG's Confidential Information has independent economic value to PRMG and this value is not static: PRMG's employees constantly update this Confidential Information to reflect the most recent developments in the residential real estate market, properties for sale, interest rates and changes in the lives of customers, applicants, and borrowers and their Personal Financial Information.

31.     PRMG continues to make significant reinvestments into its information technology, computers, networks, servers, and systems to ensure the Confidential Information stored is protected, safe, and secure.

32.     PRMG continues to make significant reinvestments into its marketing platform, credit and risk models, and dynamic product delivery systems, also Confidential Information, to provide its customers, applicants, and borrowers with access to credit and loans.

33.     PRMG constantly works to improve the utility of information relating to the strengths, weaknesses, historic and trending productivity, proper incentivization and compensation history of PRMG's employees.

34.     PRMG's Confidential Information is not readily ascertainable by PRMG's competitors, nor is it publicly available.

35.     PRMG's Core Business would suffer (and has suffered and is continuing to suffer, as explained below) if PRMG's Confidential Information were disclosed to and exploited for competitive advantage by one of PRMG's competitors.

36.     For example: if a competitor, like NMB, were to obtain PRMG's Confidential Information concerning PRMG's employees, then NMB could use this information to quickly and directly recruit and hire them away from PRMG by knowing the key metrics of their compensation (bonuses and commissions), productivity history and trends and strengths and weaknesses. Such information would enable NMB or any other competitor to know the compensation and other terms and conditions of employment that would be competitive with or beat the compensation such employees were earning at PRMG. Such information also would enable NMB to identify and target PRMG's highest-performing employees.  This would not be otherwise possible.

37.     By way of further example: if a competitor, like NMB, were to obtain PRMG's Confidential Information, then it could use this information to quickly and directly market to them competing mortgage loan products to PRMG's customers, applicants, and borrowers, with the advantage of their Personal Financial Information and PRMG's strategic and proprietary compilations and analyses. This would not be otherwise possible.

38.     During the course of their employment with PRMG, Heister and Wampler were PRMG executives, who were regularly provided extensive access to PRMG's Confidential Information, and they used it to manage PRMG's employees under their

direct and indirect supervision—including the Former PRMG Employees—as well as service PRMG's customers, applicants, and borrowers and conduct PRMG's Core Business.

39.     In the course of their employment with PRMG, the Former PRMG Employees also routinely accessed and used PRMG's Confidential Information in the performance of their duties.

40.     Heister, Wampler, and the other Former PRMG Employees had access to PRMG's Confidential Information solely because of their employment with PRMG, and they were authorized to access PRMG's Confidential Information solely when working on behalf of PRMG.

41.     The Former PRMG Employees were proficient in searching for and applying the Confidential Information made available to them in the course of their employment at PRMG.

**III.     The Former PRMG Employees' Restrictive Covenants with PRMG.**

42.     Heister and Wampler, as well the other Former PRMG Employees, each executed an Employee Confidentiality, Non-Solicitation, and Inventions Assignment Agreement with PRMG ("Restrictive Covenants Agreement").  By way of example, a true and correct copy of the Restrictive Covenants Agreement executed by Heister on May 12, 2020 is attached as Exhibit A. A true and correct copy of the Restrictive Covenants Agreement executed by Wampler on May 9, 2020 is attached as Exhibit B.

FP 44441864.2

43.     In their Restrictive Covenants Agreement, Heister, Wampler, and the other Former PRMG Employees made specific promises to PRMG regarding their obligations and duties to protect (a) PRMG's Confidential Information and trade secrets; (b) PRMG's goodwill with its employees and its assembled workforce; and (c) PRMG's goodwill with its customers. *Id.*

44.     First, they agreed that they each owed PRMG an undivided fiduciary duty of loyalty. Specifically, the Former PRMG Employees promised PRMG that:

> 1. **Duty of Loyalty**. Employee owes the Company a fiduciary duty of loyalty. While employed by the Company, Employee agrees at all times to devote Employee's best efforts to the business of the Company, to perform conscientiously all duties and obligations required or assigned, and not to usurp, for personal gain, any opportunities in the Company's line of business. …
>
> Employee shall not usurp, for personal gain or the benefit of any other third party, information and/or information which could reasonably be considered to benefit the Company. Examples of conduct that constitutes a breach of Employee's duty of loyalty if engaged in during Employee's employment with the Company include, but are not limited to:
>
> > a.  Soliciting clients of the Company for the personal benefit of Employee or any other third party;
> >
> > b.  Performing any work or services outside of the Company that competes or interferes with Employee's work at the Company or results in usurping or interfering with any prospective business opportunity;
>
> …

FP 44441864.2

e.  Discussing with any client whether the client would follow or continue to work with Employee if/when Employee leaves the Company; and

f.  Taking or retaining client information at any time without the client's authorization and/or upon termination of Employment.

*See, e.g.*, Exhs. A and B, at page 1, ¶ 1(a), (b), (e) and (f).

45.  Second, the Former PRMG Employees promised PRMG that they would protect and not exploit or misappropriate PRMG's Trade Secrets, which are defined to include the Confidential Information identified in ¶¶ 17 and 23, above. *See, e.g.*, Exhs. A and B, at pages 2-3, ¶ 2(a) and (b). Specifically, the Former PRMG Employees promised PRMG that:

3.  **Company Property.** Employee acknowledges and agrees that all Trade Secrets and Confidential Information developed, created or maintained by Employee, alone or with others, while Employee is employed by the Company, shall remain at all times the sole property of the Company, regardless of where such Trade Secrets and Confidential Information may be stored or maintained by Employee, including, without limitation, on any personal electronic or mobile device owned by Employee. Employee further acknowledges and agrees that all contact information of and all communications (including emails, text messages, and other private electronic messages) with the Company's clients, prospective clients, referral sources, and vendors that Employee may come to possess during Employee's employment with the Company shall remain the sole property of the Company even if Employee stores such information on Employee's personal cell phone or electronic device, and Employee shall not take and fail to return such information after termination of Employee's employment with the Company for any reason. Employee will be in breach of this Paragraph if Employee retains any such information on his/her personal cell phone or personal

13

email account after Employee's employment with the Company has ended.

4. **<u>Safeguarding of Company's Property & Information.</u>**

   a. Employee is strictly prohibited, at all times during Employee's employment with the Company except with prior written approval of the Company's President, from forwarding from Employee's Company email account to Employee's personal email account(s) any emails or documents containing any Company Trade Secrets and/or Confidential Information or any other business documents or communications (including any email that contains any client name or client-related information), as well as from copying, transferring or uploading to Employee's personal Cloud-based or online storage accounts such as a personal Dropbox, iCloud or Google Docs account any documents containing any Company Trade Secrets and/or Confidential Information.

   b. Employee is also strictly prohibited, at all times during Employee's employment with the Company, except (a) where doing so is part of Employee's job at the Company or necessary for performance of any job duties, (b) where Employee has previously been permitted do so by Employee's manager, or (c) with the express authorization of the Company, and then only for the sole benefit of the Company during Employee's employment, from removing from the premises or computer systems of the Company any physical item or document, or any written, electronic or recorded copy of any physical item or document, containing or embodying any Trade Secrets and/or Confidential Information or any other business documents or communications (including any email that contains any client name or client-related information), including without limitations the same in electronic or digital form.

*See, e.g.*, Exhs. A and B, at pages 4-5, ¶¶ 3 and 4 (a) and (b).

46.     The Former PRMG Employees also promised that "all of the Company's Trade Secrets and Confidential Information shall forever be maintained in confidence by Employee and used by Employee only to such extent as may be necessary in the ordinary course of performing services for the Company under this Agreement." And the Former PRMG Employees further promised PRMG that they:

> would not "at any time either during Employee's term of employment or following the termination of Employee's employment with the Company (whether voluntary or involuntary), without the prior written consent of the Company, reveal, disclose, divulge, publish, disseminate, communicate, use or employ for the benefit of Employee or others (including without limitation, any corporation, partnership, company, business, group, association, firm, trust, venture or entity other than the Company or any person not then employed by the Company) any Trade Secrets and/or Confidential Information except as provided in this Agreement for as long as the information is maintained as confidential by the Company.

> a.  Employee's agreement not to use Trade Secrets and/or Confidential Information also includes an agreement that Employee will not, directly or indirectly, use the Company's Trade Secrets and/or Confidential Information to: (i) identify existing clients of the Company for Employee's own personal benefit or the benefit of any other firm or entity; (ii) facilitate the solicitation, for Employee's personal benefit or the benefit of any other firm or entity, of any existing or prospective clients of the Company that Employee serviced or solicited or about whom Employee otherwise gained Trade Secrets and/or Confidential Information during Employee's employment with the Company; and/or (iii) otherwise unfairly compete with the Company.

> b.  **Covenant Not to Solicit the Company's Clients After Termination of Employment Through the Use of the Company's Trade Secrets and/or Confidential**

**Information.** Employee agrees that, for as long as the Trade Secrets qualify as a trade secret under applicable law and with respect to Confidential Information for two (2) years following termination of Employee's employment with the Company for any reason, whether voluntary or involuntary, Employee shall not, directly or indirectly, use any of the Company's Trade Secrets and/or Confidential Agreement to solicit or attempt to solicit any business from any of the Company's clients for the purposes of providing products and/or services that are competitive with those provided by the Company. The Company reasonably believes, and Employee expressly acknowledges and agrees that, the Company's Confidential Information will remain valuable and confidential for at least two (2) years following termination of Employee's employment.

*See, e.g.*, Exhs. A and B, at pages 6, ¶¶ 6 (a) and (b).

47.    Third, the Former PRMG Employees made certain promises to PRMG regarding its corporate computers and electronic devices. Specifically, they promised PRMG that:

5.    Company-Issued or Subsidized Electronic Devices. If Employee is issued any electronic device by the Company such as a smart phone, iPad, laptop computer, or external hard drive, if the Company has fully reimbursed Employee for the purchase of an electronic device, or if the Company is otherwise subsidizing the cost of Employee's use of any personally owned electronic device, Employee agrees that the following shall govern Employee's use, access, and possession of such devices:

a.    Employee has no right to privacy with respect to any data that is stored on any Company-owned device (which includes any device Employee purchased and was fully reimbursed for by the Company ), and no right to or expectation of privacy with respect to any Company-related data that is stored on any other device as the Company has the right to access all such devices

16

at any time to retrieve or delete all Company-related data;

b. Employee's use of the device shall be in accordance with the Employee Handbook policies pertaining to use of Company equipment, computers, networks and systems; …

d. Employee will not use the device in a manner that violates any applicable federal, state and local laws such as driving laws;

e. Employee will return all Company-owned devices to the Company when requested to do so by the Company and/or immediately upon termination of Employee's employment with the Company for any reason; …

g. as soon as Employee's employment with the Company ends for any reason, or as soon as the Company requests that Employee return the Company-owned device for any reason, Employee no longer has authorization or consent from the Company to access the Company-owned device and Employee will not access such device for any reason before returning it to the Company; and

*See, e.g.*, Exhs. A and B, at pages 5-6, ¶ 5 (a), (b), (d), (e) and (g).

48. Fourth, the Former PRMG employees promised PRMG that they would not solicit PRMG's clients in order to divert their mortgage business away from PRMG. Specifically, they agreed that:

during Employee's employment with the Company and for one (1) year following separation or cessation of Employee's employment with the Company for any reason, whether voluntary or involuntary, Employee will not, in any capacity (including as an employee, employer, consultant, agent, principal, partner, corporate officer, board member, director, or in any other individual or representative capacity), for Employee's benefit and/or the benefit of any third party, engage in any of the following severable activities: (i.) Solicit, encourage or induce any "Clients"

17

> or "Prospective Clients" to purchase or obtain "Products and/or Services" (ii.) Accept "Products and/or Services" business from or cause or authorize "Products and/or Services" business to be accepted by any "Clients" or "Prospective Clients" (as these terms are defined below). (iii.) Perform, sell or provide "Products and/or Services" to any "Clients" or "Prospective Clients" (as these terms are defined below).

*See, e.g.*, Exhs. A and B, pages 7-8, ¶¶ 8 (internal references omitted).

49.     Fifth, the Former Employees agreed that they would not recruit PRMG employees to leave PRMG or seek alternative employment at a competitor, like NMB. Specifically, they promised PRMG that:

> 11. Non-Recruiting Covenant. Employee acknowledges and agrees that the Company has invested substantial time and effort in assembling its present personnel, consultants, and independent contractors, and that, as a result of Employee's employment with the Company, Employee will become privy to and familiar with the Company's personnel, consultants, independent contractors, and recruiting practices and strategies and with the Company's human capital and talent. Therefore, to the extent permitted by applicable law, Employee agrees that during Employee's employment with the Company and for one (1) year following Employee's termination of employment with the Company, whether voluntary or involuntary, Employee will not directly or indirectly solicit or attempt to solicit, recruit or attempt to recruit, or otherwise aid or abet any third party in soliciting or recruiting, or induce or attempt to induce, any person who is at the time of being recruited or solicited a current employee, consultant or independent contractor of the Company with whom Employee worked or had contact, whom Employee supervised or managed, or about whom Employee received or accessed any Confidential Information or Trade Secrets at any time during the last two (2) years of Employee's employment with the Company, or induce or attempt to induce any such employee, consultant or independent contractor of the Company to terminate or cease employment or other relationship with the Company or to work for or with any business that competes with the Company.

*See, e.g.*, Exhs. A and B, at pages 10-11, ¶ 11.

50.     Finally, the Former PRMG Employees promised PRMG that during their employment with PRMG, they would "not, directly or indirectly, either as an employee, employer, consultant, agent, principal, partner, corporate officer, board member, director, or in any other individual or representative capacity, engage or attempt to engage in any competitive activity relating to the subject matter of Employee's employment with the Company or relating to the Company's line of business or render services to any firm or business which competes or plans to compete with the Company in the products or services being provided, marketed or developed by the Company." *See, e.g.*, Exhs. A and B, at page 10, ¶ 9.

51.     NMB was well aware that each of Former PRMG Employees owed the aforementioned contractual obligations to PRMG.  Upon information and belief, NMB required the Former PRMG Employees to agree to similar obligations to NMB as a condition of their employment with NMB.

**IV.     NMB's Expansion of Its Business in Florida, Indiana, Kentucky, Michigan, and Ohio by Raiding PRMG Employees.**

52.     NMB cannot maintain the growth described on its website, detailed at pages 1 and 2, above, through a legal and organic process.  Instead, it has aggressively grown its business in Florida, Ohio, Indiana, Kentucky, and Michigan by utilizing the influence and authority of Heister and Wampler, while still employed by PRMG, to recruit the Former PRMG Employees, and then encouraging and enabling the Former

PRMG Employees to violate their duty of loyalty and post-employment contractual duties to PRMG.

53.     Through NMB's onboarding and recruitment activities, NMB orchestrated the resignation of the dozens of Former PRMG Employees and, upon information and belief, continues to target other PRMG employees.

54.     Upon information and belief, NMB facilitated the breach of the Former PRMG Employees' duty of loyalty and contractual obligations, by among other things:

a.      preparing NMB e-mail accounts and business cards to the Former PRMG Employees, while they were working for and employed by PRMG; and

b.      providing assistance through NMB's licensing department to transfer the Former PRMG Employees' licenses while they were still employed by PRMG.

55.     Upon information and belief, NMB encouraged former the Former PRMG Employees to violate federal statutes, statutes and breach their contractual obligations to PRMG through monetary incentives, including but not limited to signing bonuses and a referral program, which provided them with compensation for recruiting other PRMG employees in violation of their non-solicitation obligations to PRMG.

56.     In addition to these monetary incentives, upon information and belief, NMB provided back-end protection to the Former PRMG Employees, in the form of indemnification from damage awards, penalties, or judgments, if PRMG were to succeed in litigation against them.

57.     This indemnification reflects that NMB and the indemnitees are aware that their conduct violates one or more of their employment agreements with PRMG and/or federal and state law.

58.     NMB's mode of operation has been to use PRMG managers to solicit other PRMG employees—employees who trusted, relied upon, and looked up to those managers—to leave PRMG and work for NMB.  Upon information and belief, NMB encouraged and incentivized the Former PRMG Employees, before they formally resigned from PRMG, to transfer PRMG's Confidential Information outside PRMG, including to their own personal e-mail accounts and to NMB, by way of productivity and production related compensation and bonuses.  NMB has targeted PRMG's offices in Florida, Ohio, Indiana, Kentucky, and Michigan for the raiding of the PRMG employees and customers in an effort to profit and grow its business at PRMG's expense and/or with the intention of injuring PRMG.

59.     NMB's raid relied upon the recruitment of Heister and Wampler, who are PRMG executives.  With NMB's urging and assistance, and in violation of their own legal obligations, Heister and Wampler used their positions of power and influence to improperly solicit the other Former PRMG Employees to resign and leave PRMG to work for NMB.

60.     Upon information and belief, while still employed and compensated by PRMG, Heister and Wampler acted as recruiters for and agents of NMB. On behalf and as agents of NMB, they instructed and encouraged the Former PRMG Employees not

only on how to resign from PRMG, but also to utilize their access to PRMG's computer systems to misappropriate  PRMG's Confidential Information and bring it with them to exploit at NMB.

61.    In the weeks leading up to final execution, Heister, with the encouragement and support of NMB, travelled to visit many of the Former PRMG Employees to solicit them and obtain final buy-in on the plot to steal PRMG's Confidential Information and use it on behalf of NMB.

62.    Bringing NMB's raiding plan to completion, on May 12, 2022, Wampler provided final instructions to the Former PRMG Employee on behalf of NMB.  Wampler directed the Former PRMG Employees to send to Heister—and specifically not to anyone at PRMG's corporate office—their respective resignation letters.  Wampler gave the Former PRMG Employees a template resignation letter to use in which they would state that their resignation was effective at 3:00 p.m. on Friday, May 13, 2022.  Heister would not notify PRMG of any resignations until precisely this time. Wampler further instructed the Former PRMG Employees how to alter their timecards to ensure that they would be paid for a full day on their resignation date, even though they would be leaving two hours early.  Finally, Wampler directed the Former PRMG Employees to back up and synchronize their computers to the PRMG corporate information technology system, to ensure that that the Former PRMG Employees would have access to and would be able to misappropriate all of the most recent and updated PRMG Confidential Information in the hours before they stopped working for PRMG.

63.     Throughout the day on May 12 and May 13, the Former PRMG Employees sent Heister their resignation letters, using the exact text that NMB, through Wampler, directed them to provide.

64.     Finally, at 3:00 p.m. on May 13, Heister sent PRMG the cache of resignation letters that he had collected, notifying PRMG for the first time that the Former PRMG Employees were leaving *en masse* to go to NMB.

65.     The Former PRMG Employees immediately commenced employment for NMB and began soliciting PRMG's customers and prospective customers on behalf of NMB, including by using the Confidential Information that NMB encouraged them to take from PRMG.

66.     While the majority of the Former PRMG Employees left on May 13, others left in the days and weeks that followed.  But immediately after their resignations, they likewise joined NMB and began soliciting PRMG's customers and prospective customers.

67.     With the encouragement and assistance of NMB, Heister and Wampler are continuing to violate their contractual obligations to PRMG by their ongoing solicitation of PRMG employees to leave PRMG and come work instead for NMB.

68.     Upon information and belief, Heister and Wampler took additional assets from PRMG in service of their roles in NMB's raid.

23

## V.     The Former PRMG Employees Diversion of PRMG Customers to NMB.

69.     Upon information and belief, even before resigning from PRMG, the Former PRMG Employees began working for NMB. In other words, NMB turned the Former PRMG Employees into the equivalent of corporate double-agents.

70.     On information and belief, while still employed by PRMG but planning to transition to NMB, the Former PRMG Employees coordinated with NMB to work on dozens of loans for what were ostensibly PRMG's customers and prospective customers, so that the Former PRMG Employees could originate those loans at NMB as soon as they formally became employed by NMB.

71.     To this day, the Former PRMG Employees, now officially employed by NMB, continue to solicit PRMG's customers and prospective customers on behalf of NMB, including by using the Confidential Information that NMB encouraged them to take from PRMG.

## VI.    NMB Disregarded PRMG's Cease and Desist Letter.

72.     On or about May 18, 2022, PRMG sent via Federal Express and electronic mail a cease-and-desist letter of the same date to NMB that outlined NMB's misconduct, put NMB on notice of potential litigation, and demanded that NMB immediately refrain from:

> a.     Soliciting and recruiting, either directly or indirectly, any PRMG employees; and
>
> b.     Inducing PRMG employees to terminate or cease employment with PRMG; and

24

     c.     Soliciting all past, present, or future PRMG customers, and

     d.     Using, publishing, and disclosing PRMG's leads, trade secrets, and confidential information (this including that [NMB] take[s] appropriate actions to ensure that PRMG's leads, trade secrets, and confidential information are not used, published, or disclosed by the PRMG employees or NMB.

(A true and correct copy of the foregoing cease and desist letter sent to NMB is attached hereto as Exhibit C.)

73.     Despite the gravity of the situation, and perhaps because it was not in a position to deny PRMG's allegations, NMB was in no hurry to respond to PRMG's cease and desist letter.

74.     In fact, rather than send a formal written response, NMB initially spoke through its actions and doubled down on its raiding of PRMG's employees. During the two weeks after NMB received PRMG's cease and desist letter outlining concerns about NMB's improper recruiting, NMB hired nearly twenty additional PRMG employees, including Kris McCurry, a PRMG Branch Manager and executive in Columbus, Ohio and members of his team, as well as large contingent of Loan Officers, Processors, and others who had worked under Jay Perez, the former Branch Manager of PRMG's Miami office who had joined NMB during the first wave of the raid. Upon information and belief, NMB recruited McCurry, his team, and the remainder of employees in PRMG's Miami office, through Heister and Wampler, in violation of their contractual obligations to PRMG.

75. On May 31, 2022, after ignoring PRMG's demands for nearly two weeks, NMB took a brief pause from using Heister and Wampler to recruit PRMG employees and misappropriate PRMG's trade secret information, and finally responded to PRMG's cease and desist letter. *See* May 31, 2022 Letter from Christopher J. Kelly, Esq., a true and correct copy of which is attached hereto as Exhibit D. But rather than call an end to its nationwide raid of PRMG, NMB dug its heels in further, challenging the enforceability of the Former PRMG Employees' Restrictive Covenants Agreements and declaring that it would not cease its solicitation of PRMG employees and customers.

76. True to its word, NMB recruited away three more Loan Officers from PRMG that week.

77. Upon information and belief, NMB continues to improperly recruit PRMG employees, and the identities of the individuals involved will be exposed during the discovery process.

## CLAIMS FOR RELIEF

### COUNT ONE
### MISAPPROPRIATION OF TRADE SECRETS
### VIOLATION OF THE U.S. DEFEND TRADE SECRETS ACT

78. PRMG re-alleges, and incorporates by this reference, the allegations in the preceding paragraphs as though set forth fully herein.

79. The Confidential Information developed by PRMG, and taken by NMB, constitutes trade secrets that belong to PRMG and are subject to protection under the U.S. Defend Trade Secrets Act, 18 U.S.C. § 1836, et seq. ("DTSA").

26

80.     NMB used the raid of the Former PRMG Employees as a means to transfer and misappropriate PRMG's Confidential Information. This enabled NMB to use this information to divert business from PRMG to itself, for its benefit and to the detriment of PRMG.

81.     NMB used its raid of the Former PRMG Employees efforts to solicit PRMG customers, borrowers and applicants to do business with NMB instead of PRMG. This involved the unauthorized use of such information as the names, addresses, account information, credit scores, FICO scores, personal financial information, tax information, and borrowing needs of PRMG's customers, borrowers and applicants, and of PRMG's vendor accounts, account numbers, passwords, methods, services, pricing, practices, techniques, sales, and marketing, in breach of contractual, policy and legal duties of the Former PRMG Employees to maintain the secrecy of such Confidential Information and not to disclose it.

82.     NMB was aware of the contractual, policy and legal duties owed to PRMG by the Former PRMG Employees with respect to PRMG's Confidential Information, but it encouraged and enabled the Former PRMG Employees to breach those duties so that it could obtain access to PRMG's Confidential Information.

83.     This Confidential Information is valuable because it is not generally known or readily accessible, through proper means, to others who can profit from its use, and it is not readily available to the public or to PRMG's competitors. PRMG spends significant

sums, in terms of both financial and human resources, to develop, maintain, and safeguard this information, which is of great value to any competitor.

84.     PRMG's customers, borrowers and applicants entrust PRMG with their Personal Financial Information to obtain mortgage loan financing, with the expectation and promise that PRMG will protect and maintain the safety of this Personal Financial Information.  NMB knew this, as its own customers, borrowers and applicants entrust NMB with their Personal Financial Information with the same expectations.

85.     PRMG has taken more than adequate measures under the circumstances to maintain the secrecy of this information, including requiring computer access passwords to be used to access Company computer systems and records, and having contracts and policies that expressly prohibit the use, removal, and disclosure of such information outside PRMG.

86.     The conduct of NMB, including through its raid of the Former PRMG Employees, set forth in this Count and throughout this Complaint constitutes a misappropriation and misuse of PRMG's trade secret information in violation of the DTSA.

87.     NMB's misappropriation of PRMG's trade secrets, and the Former PRMG's Employee's assistance and facilitation of the same, have caused PRMG irreparable injury for which monetary damages alone are an inadequate remedy.

88.     NMB willfully and maliciously misappropriated PRMG's trade secrets, with the intention of using these assets to cripple PRMG.

89.     This willful and malicious misappropriation of PRMG's trade secrets justifies the award of reasonable attorneys' fees to PRMG under the DTSA.

90.     NMB is directly and/or vicariously liable for the acts described herein.

91.     As a consequence of the foregoing, PRMG has suffered and will continue to suffer damages and loss. PRMG has sustained damages including but not limited to the loss of revenue and capital; loss of intellectual property and Confidential Information; loss of valuable business; loss of and/or damage to PRMG's assembled workforce in several offices; uncompensated use of PRMG's intellectual property, assembled workforce and Confidential Information; the loss of profits and future profits; the loss of goodwill; and other damages, all in an amount to be determined at trial, and all of which damages are ongoing and continue unabated at the time of the filing of this Complaint.

92.     The misconduct undertaken by NMB threatens further misappropriation of PRMG's trade secrets.

93.     The acts described herein, as a violation of the DTSA, are an adequate, independent basis upon which the Court can enter an injunction to prevent NMB's threatened misappropriation.

**WHEREFORE**, Plaintiff Paramount Residential Mortgage Group, Inc., respectfully requests judgment in its favor and against Defendant Nationwide Mortgage Bankers, Inc. on Count One; an award of damages for actual loss caused by the misappropriation; damages for any unjust enrichment caused by the misappropriation that is not addressed in computing damages for actual loss; damages caused by the

misappropriation measured by imposition of liability for a reasonable royalty for the unauthorized disclosure or use of the trade secret; exemplary (punitive) damages; reasonable attorneys' fees; injunctive relief; and any other award or relief that the Court deems appropriate.

### COUNT TWO
#### THREATENED MISAPPROPRIATION
#### VIOLATION OF THE U.S. DEFEND TRADE SECRETS ACT

94.    PRMG re-alleges, and incorporates by this reference, the allegations of the preceding paragraphs as though set forth fully herein.

95.    The Confidential Information developed by PRMG are trade secrets subject to protection under the DTSA.

96.    Using the Former PRMG Employees, NMB improperly accessed, obtained and used PRMG's Confidential Information.

97.    This Confidential Information derives independent economic value by not being accessible, through proper means, to competitors such as NMB, which can profit from its use or disclosure. PRMG has spent significant sums to develop and maintain this information, so that its employees can market PRMG's mortgage and loan services to PRMG's clients and service them, giving this Confidential Information great value to any competitor.

98.    PRMG has taken more than adequate measures under the circumstances to maintain the secrecy of its trade secrets: assigning computer access passwords to be used to access PRMG's computer systems and the electronic files and records residing on

them; restricting access to its business premises, including its offices; and having employees follow confidentiality and non-disclosure policies, which expressly prohibit the use and disclosure of such information outside of PRMG.

99.     The conduct of NMB set forth in this Count and throughout this Complaint constitutes a threatened misappropriation of PRMG's trade secret information in violation of the DTSA, because NMB will use PRMG's Confidential Information without PRMG's consent and despite the knowledge that this information was acquired by the PRMG's Former Employees where they had duties to maintain this Confidential Information's secrecy and limit its use.

100.     This threatened misappropriation of PRMG's trade secrets, and NMB's assistance and facilitation of the same, have caused PRMG irreparable injury for which monetary damages alone are an inadequate remedy.

101.     The threatened misappropriation of PRMG's trade secrets by NMB is willful and malicious, and therefore satisfies the requirement for an award of exemplary (punitive) damages.

102.     This willful and malicious misappropriation of PRMG's trade secrets justifies the award of reasonable attorneys' fees to PRMG under the DTSA.

103.     NMB is directly and/or vicariously liable for the acts described herein.

104.     As a consequence of the foregoing, PRMG has suffered and will continue to suffer damages and loss. PRMG has sustained damages including but not limited to the loss of revenue and capital; loss of intellectual property and Confidential Information;

loss of valuable business; loss of and/or damage to PRMG's assembled workforce in several offices; uncompensated use of PRMG's intellectual property, assembled workforce and Confidential Information; the loss of profits and future profits; the loss of goodwill; and other damages, all in an amount to be determined at trial, and all of which damages are ongoing and continue unabated at the time of the filing of this Complaint.

105.   The acts described herein, as a violation of the DTSA, are an adequate, independent basis upon which the Court can enter an injunction to prevent NMB's threatened misappropriation.

**WHEREFORE**, Plaintiff Paramount Residential Mortgage Group, Inc., respectfully requests judgment in its favor and against Defendant Nationwide Mortgage Bankers, Inc. on Count Two; an award of damages for actual loss caused by the misappropriation; damages for any unjust enrichment caused by the misappropriation that is not addressed in computing damages for actual loss; damages caused by the misappropriation measured by imposition of liability for a reasonable royalty for the unauthorized disclosure or use of the trade secret; exemplary (punitive) damages; reasonable attorneys' fees; injunctive relief; and any other award or relief that the Court deems appropriate.

### COUNT THREE
#### MISAPPROPRIATION OF TRADE SECRETS
#### VIOLATION OF THE NEW JERSEY UNIFORM TRADE SECRETS ACT

106.   PRMG re-alleges, and incorporates by this reference, the allegations in the preceding paragraphs as though set forth fully herein.

107.   The Confidential Information developed by PRMG, and taken by NMB, constitutes trade secrets that belong to PRMG and are subject to protection under the New Jersey Uniform Trade Secrets Act, N.J. Stat. Ann. § 56:15-1, *et seq.* (2022) ("NJUTSA").

108.   NMB used the raid of the Former PRMG Employees as a means to transfer and misappropriate PRMG's Confidential Information. This enabled NMB, with the assistance of the Former PRMG Employees, to use this information to divert business from PRMG to NMB, for its benefit and to the detriment of PRMG.

109.   NMB used its raid of the Former PRMG Employees efforts to solicit PRMG customers, borrowers and applicants to do business with NMB instead of PRMG. This involved the unauthorized use of such information as the names, addresses, account information, credit scores, FICO scores, personal financial information, tax information, and borrowing needs of PRMG's customers, borrowers and applicants, and of PRMG's vendor accounts, account numbers, passwords, methods, services, pricing, practices, techniques, sales, and marketing, in breach of contractual, policy and legal duties of the Former PRMG Employees to maintain the secrecy of such Confidential Information and not to disclose it.

110.   NMB was aware of the contractual, policy and legal duties owed to PRMG by the Former PRMG Employees with respect to PRMG's Confidential Information, but it encouraged and enabled the Former PRMG Employees to breach those duties so that it could obtain access to PRMG's Confidential Information.

FP 44441864.2

111.    This Confidential Information is valuable because it is not generally known or readily accessible, through proper means, to others who can profit from its use, and it is not readily available to the public or to PRMG's competitors. PRMG spends significant sums, in terms of both financial and human resources, to develop, maintain, and safeguard this information, which is of great value to any competitor.

112.    PRMG's customers, borrowers and applicants entrust PRMG with their personal financial information to obtain mortgage loan financing, with the expectation and promise that PRMG will protect and maintain the safety of this personal financial information.  NMB knew this, as its own customers, borrowers and applicants entrust NMB with their personal financial information with the same expectations.

113.    PRMG has taken more than adequate measures under the circumstances to maintain the secrecy of this information, including requiring computer access passwords to be used to access PRMG computer systems and records, and having contracts and policies that expressly prohibit the use, removal, and disclosure of such information outside PRMG.

114.    The conduct of NMB set forth in this Count and throughout this Complaint constitutes a misappropriation and misuse of PRMG's trade secret information in violation of the NJUTSA.

115.    This misappropriation of PRMG's trade secrets, and the Former PRMG's Employee's assistance and facilitation of the same, have caused PRMG irreparable injury for which monetary damages alone are an inadequate remedy.

34

116.   NMB willfully and maliciously misappropriated PRMG's trade secrets, with the intention of using these assets to cripple PRMG.

117.   This willful and malicious misappropriation of PRMG's trade secrets justifies the award of reasonable attorneys' fees to PRMG under the NJUTSA.

118.   NMB is directly and/or vicariously liable for the acts described herein.

119.   As a consequence of the foregoing, PRMG has suffered and will continue to suffer damages and loss. PRMG has sustained damages including but not limited to the loss of revenue and capital; loss of intellectual property and Confidential Information; loss of valuable business; loss of and/or damage to PRMG's assembled workforce in several offices; uncompensated use of PRMG's intellectual property, assembled workforce and Confidential Information; the loss of profits and future profits; the loss of goodwill; and other damages, all in an amount to be determined at trial, and all of which damages are ongoing and continue unabated at the time of the filing of this Complaint.

120.   The misconduct undertaken by NMB threatens further misappropriation of PRMG's trade secrets.

121.   The acts described herein, as a violation of the NJUTSA, are an adequate, independent basis upon which the Court can enter an injunction to prevent NMB's threatened misappropriation.

WHEREFORE, Plaintiff Paramount Residential Mortgage Group, Inc., respectfully requests judgment in its favor and against Defendant Nationwide Mortgage Bankers, Inc. on Count Three; an award of damages for actual loss caused by the

misappropriation; damages for any unjust enrichment caused by the misappropriation that is not addressed in computing damages for actual loss; damages caused by the misappropriation measured by imposition of liability for a reasonable royalty for the unauthorized disclosure or use of the trade secret; exemplary (punitive) damages; reasonable attorneys' fees; injunctive relief; and any other award or relief that the Court deems appropriate.

## COUNT FOUR
### THREATENED MISAPPROPRIATION OF TRADE SECRETS
### VIOLATION OF THE NEW JERSEY UNIFORM TRADE SECRETS ACT

122.    PRMG re-alleges, and incorporates by this reference, the allegations in the preceding paragraphs as though set forth fully herein.

123.    The Confidential Information developed by PRMG are trade secrets subject to protection under the NJUTSA.

124.    Using the Former PRMG Employees, NMB improperly accessed, obtained and used PRMG's Confidential Information.

125.    This Confidential Information derives independent economic value by not being accessible, through proper means, to competitors such as NMB, which can profit from its use or disclosure. PRMG has spent significant sums to develop and maintain this information, so that its employees can market PRMG's mortgage and loan services to PRMG's clients and service them, giving this Confidential Information great value to any competitor.

126.    PRMG has taken more than adequate measures under the circumstances to maintain the secrecy of its trade secrets: assigning computer access passwords to be used to access PRMG's computer systems and the electronic files and records residing on them; restricting access to its business premises, including its offices; and having employees follow confidentiality and non-disclosure policies, which expressly prohibit the use and disclosure of such information outside of PRMG.

127.    The conduct of NMB set forth in this Count and throughout this Complaint constitutes a threatened misappropriation of PRMG's trade secret information in violation of the NJUTSA, because NMB will use PRMG's Confidential Information without PRMG's consent and despite the knowledge that this information was acquired by the PRMG's Former Employees where they had duties to maintain this Confidential Information's secrecy and limit its use.

128.    This threatened misappropriation of PRMG's trade secrets, and NMB's assistance and facilitation of the same, has caused PRMG irreparable injury for which monetary damages alone are an inadequate remedy.

129.    The threatened misappropriation of PRMG's trade secrets by NMB is willful and malicious, and therefore satisfies the requirement for an award of exemplary (punitive) damages.

130.    This willful and malicious misappropriation of PRMG's trade secrets justifies the award of reasonable attorneys' fees to PRMG under the NJUTSA.

131.    NMB is directly and/or vicariously liable for the acts described herein.

FP 44441864.2

132.   As a consequence of the foregoing, PRMG has suffered and will continue to suffer damages and loss. PRMG has sustained damages including but not limited to the loss of revenue and capital; loss of intellectual property and Confidential Information; loss of valuable business; loss of and/or damage to PRMG's assembled workforce in several offices; uncompensated use of PRMG's intellectual property, assembled workforce and Confidential Information; the loss of profits and future profits; the loss of goodwill; and other damages, all in an amount to be determined at trial, and all of which damages are ongoing and continue unabated at the time of the filing of this Complaint.

133.   The acts described herein, as a violation of the NJUTSA, are an adequate, independent basis upon which the Court can enter an injunction to prevent NMB's threatened misappropriation.

**WHEREFORE**, Plaintiff Paramount Residential Mortgage Group, Inc., respectfully requests judgment in its favor and against Defendant Nationwide Mortgage Bankers, Inc. on Count Four; an award of damages for actual loss caused by the misappropriation; damages for any unjust enrichment caused by the misappropriation that is not addressed in computing damages for actual loss; damages caused by the misappropriation measured by imposition of liability for a reasonable royalty for the unauthorized disclosure or use of the trade secret; exemplary (punitive) damages; reasonable attorneys' fees; injunctive relief; and any other award or relief that the Court deems appropriate.

FP 44441864.2

## COUNT FIVE
### UNAUTHORIZED ACCESS OF PRMG'S COMPUTERS
### VIOLATION OF THE U.S. COMPUTER FRAUD AND ABUSE ACT

134.   PRMG re-alleges, and incorporates by this reference, the allegations in the preceding paragraphs as though set forth fully herein.

135.   PRMG's computers are "protected computers" within the meaning of 18 U.S.C. § 1030(e) because they are computers purchased and used by PRMG in interstate or foreign commerce or communication.

136.   Upon information and belief, NMB, through individuals working on its behalf, including but not limited to the Former PRMG Employees, knowingly, intentionally, and with the intent to defraud PRMG, accessed PRMG's computers without authorization in an effort to download, copy, transfer, or in some manner obtain files, documents, spreadsheets, programs, code, macros, and/or electronically stored information containing PRMG's Confidential Information.

137.   NMB was not authorized to access PRMG's computers.

138.   Upon information and belief, NMB utilized third persons, including but not limited to the Former PRMG Employees, to obtain access to PRMG's computers.

139.   NMB cannot obtain through third persons the authority to access PRMG's computers that NMB does not itself have.

140.   As a result, NMB caused PRMG damages and loss in excess of $5,000. This loss includes but is not limited to the cost to PRMG of responding to NMB's violations described above, which consisted of an interruption of service and use of

NMB's computers in order to investigate and assess the unauthorized access and loss; a damage assessment; and the investigation of PRMG's computers and related systems following NMB's violations, as alleged above.

141.    As a consequence of the foregoing, PRMG has suffered and will continue to suffer injury, loss, damages, and irreparable harm, including but not limited to the impairment to the integrity and exclusive availability of confidential information that belongs to PRMG and resided on its computers and computer systems, as alleged above; other business damages; and has sustained damages including but not limited to loss of capital, loss of valuable business, loss of profits and future profits, and loss of good will, in an amount to be determined at trial, which damages are ongoing and continue unabated at the time of the filing of this Complaint.

**WHEREFORE**, Plaintiff Paramount Residential Mortgage Group, Inc., respectfully requests judgment in its favor and against Defendant Nationwide Mortgage Bankers, Inc. on Count Five; an award of damages for actual loss; an award of compensatory damages, economic damages and injunctive relief or other equitable relief; attorneys' fees and costs; computer forensics fees and costs; and any other award or relief that the Court deems appropriate.

### COUNT SIX
#### AIDING AND ABETTING BREACH OF THE DUTY OF LOYALTY– ACQUIRING ADVERSE INTERESTS AND TAKING ADVERSE ACTION AGAINST EMPLOYER

142.    PRMG repeats and restates each and every allegation set forth above as if the same were fully set forth at length herein.

40

143.   NMB has assisted, aided, and/or abetted the Former PRMG Employees in the conduct that constitutes breach of their duty of loyalty to PRMG, and continues to do so, including but not limited to the duty of the Former PRMG Employees not to acquire any interests adverse to PRMG's and not to take any action contrary to PRMG's interests while still in its employ.

144.   NMB has been and is aware of its role in assisting, aiding, and/or abetting the Former PRMG Employees in breaching their duty of loyalty to PRMG.

145.   NMB has knowingly and substantially assisted the Former PRMG Employees in the conduct that constitutes breach of their duty of loyalty to PRMG, and continues to do so.

146.   As a result, PRMG has been damaged and harmed, continues to be damaged and harmed, and has no adequate remedy at law.

**WHEREFORE**, Plaintiff Paramount Residential Mortgage Group, Inc., respectfully requests judgment in its favor and against Defendant Nationwide Mortgage Bankers, Inc. on Count Six; an award of damages for actual loss; an award of compensatory damages, economic damages and injunctive relief or other equitable relief; attorneys' fees and costs; and any other award or relief that the Court deems appropriate.

FP 44441864.2

## COUNT SEVEN
### AIDING AND ABETTING BREACH OF THE DUTY OF LOYALTY – MISAPPROPRIATION OF TRADE SECRETS AND CONFIDENTIAL INFORMATION

147.   PRMG repeats and restates each and every allegation set forth above as if the same were fully set forth at length herein.

148.   PRMG has assisted, aided, and/or abetted the Former PRMG Employees in the conduct that constitutes breach of their duty of loyalty to PRMG, and continues to do so, including but not limited to the duty of the Former PRMG Employees not to use or disclose PRMG's trade secrets or confidential information acquired during their employment with PRMG.

149.   NMB has been and are aware of its role in assisting, aiding, and/or abetting the Former PRMG Employees in breaching their duty of loyalty to PRMG.

150.   NMB has knowingly and substantially assisted the Former PRMG Employees in the conduct that constitutes breach of their duty of loyalty to PRMG, and continues to do so.

151.   As a result, PRMG has suffered and will continue to suffer injury, damages, and irreparable harm.

**WHEREFORE**, Plaintiff Paramount Residential Mortgage Group, Inc., respectfully requests judgment in its favor and against Defendant Nationwide Mortgage Bankers, Inc. on Count Seven; an award of damages for actual loss; an award of compensatory damages, economic damages and injunctive relief or other equitable

relief; attorneys' fees and costs; and any other award or relief that the Court deems appropriate.

## COUNT EIGHT
### TORTIOUS INTERFERENCE WITH THE CONTRACTS OF FORMER PRMG EMPLOYEES

152.    PRMG repeats and restates each and every allegation set forth above as if the same were fully set forth at length herein.

153.    Upon information and belief, NMB knew of the Employee Confidentiality, Non-Solicitation, and Inventions Assignment Agreements between PRMG and the Former PRMG Employees.

154.    NMB intentionally and without justification interfered with the contractual relationship between PRMG, on the one hand, and each of the Former PRMG Employees on the other hand, and encouraged and induced the Former PRMG Employees to breach their Employee Confidentiality, Non-Solicitation, and Inventions Assignment Agreements with PRMG, and continues to encourage and induce those individuals to continue said breaches, including by encouraging and inducing them to misappropriate PRMG's Confidential Information as well as solicit PRMG employees and customers on behalf of NMB.

155.    As a result, PRMG has suffered and will continue to suffer injury, damages, and irreparable harm.

**WHEREFORE**, Plaintiff Paramount Residential Mortgage Group, Inc., respectfully requests judgment in its favor and against Defendant Nationwide Mortgage Bankers, Inc. on Count Eight; an award of damages for actual loss; an award of

FP 44441864.2

compensatory damages, economic damages and injunctive relief or other equitable relief; attorneys' fees and costs; and any other award or relief that the Court deems appropriate.

## COUNT NINE
### TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIPS AND PROSPECTIVE ECONOMIC ADVANTAGE

156.   PRMG repeats and restates each and every allegation set forth above as if the same were fully set forth at length herein.

157.   PRMG has developed and maintained and continues to develop and maintain contractual and prospective relationships with customers, as well as with prospective customers, of whom the Former PRMG Employees were aware in their capacity as PRMG employees in the course of their employment with PRMG.

158.   NMB know, knew, or reasonably should know or should have known about these contractual and prospective relationships.

159.   NMB intentionally, maliciously, and improperly interfered with, and continue to interfere with, PRMG's contractual and prospective relationships with its customers and, upon information and belief, its prospective customers, including but not limited to inducing them to sever or not to commence contractual relationships with PRMG.

160.   NMB has used and continue to use PRMG's trade secrets and confidential information to compete unlawfully with PRMG and to undermine PRMG's existing contractual and prospective relationships with customers and prospective customers.

FP 44441864.2

161.    As a result, PRMG has suffered and will continue to suffer injury, damages, and irreparable harm.

**WHEREFORE**, Plaintiff Paramount Residential Mortgage Group, Inc., respectfully requests judgment in its favor and against Defendant Nationwide Mortgage Bankers, Inc. on Count Nine; an award of damages for actual loss; an award of compensatory damages, economic damages and injunctive relief or other equitable relief; attorneys' fees and costs; and any other award or relief that the Court deems appropriate.

### COUNT TEN
### <u>Employee Piracy</u>

162.    PRMG repeats and restates each and every allegation set forth above as if the same were fully set forth at length herein.

163.    NMB has targeted PRMG for the raiding and pirating of its employees and has engaged, and continues to engage, in the wrongful, improper, and unlawful conduct described above, in order to injure PRMG and to benefit NMB at PRMG's expense by depriving it of experienced employees and consequently of revenues, and by building up its own workforce and customer base by wrongfully obtaining the same from PRMG, all the while imposing on PRMG the burden and expense of recruiting and training new employees and attempting to recover economic ground lost as a result of NMB's tortious activities.

164.    The details of NMB's employee pirating activities are set forth above and do not need to be repeated in this Count.  The following therefore is merely illustrative.

165.   NMB utilized high-level  and influential PRMG insiders to engage in its employee piracy.

166.   In particular, NMB instructed Heister and Wampler to actively solicit the other Former PRMG employees to leave PRMG and join them at NMB.

167.   While still employed by PRMG, Heister travelled the country recruiting PRMG employees on behalf of NMB.

168.   NMB had complete control over the raid.  It instructed Heister and Wampler to make sure that news of any departures was hidden from PRMG until precisely the right moment.  Thus, Wampler provided the Former PRMG Employees with the exact language that NMB wanted them to use in their resignation letters.  He directed the Former PRMG Employees not to send their resignation letters to anyone but Heister.  Then, when the moment was right and NMB was ready, Heister notified PRMG of the mass resignation.

169.   NMB's recruitment activities aimed at PRMG are therefore not the ordinary competition for able and experienced employees in a free market, but a planned campaign of mass recruiting adopted and executed in order to disable a competitor.  At all times during its raid of PRMG, NMB acted with malice and without any justification.

170.   As a result of NMB's pirating activities, PRMG has been forced to engage in its own, legitimate recruiting activities; and has lost many revenue opportunities.

171.   As a result, PRMG has suffered and will continue to suffer injury, damages, and irreparable harm.

**WHEREFORE**, Plaintiff Paramount Residential Mortgage Group, Inc., respectfully requests judgment in its favor and against Defendant Nationwide Mortgage Bankers, Inc. on Count Ten; an award of damages for actual loss; an award of compensatory damages, economic damages and injunctive relief or other equitable relief; attorneys' fees and costs; and any other award or relief that the Court deems appropriate.

### COUNT ELEVEN
### UNFAIR COMPETITION

172.   PRMG repeats and restates each and every allegation set forth above as if the same were fully set forth at length herein.

173.   By virtue of their acts and omissions set forth in detail above, NMB has engaged in unfair competition with PRMG, for example by misappropriating its trade secrets, confidential information, and proprietary information; by interfering with its existing and prospective customer relationships, its contracts, and its employment relationships; by improperly capitalizing on the goodwill of PRMG; and by employing unfair and deceptive practices intended to hinder delay, divert, or prevent PRMG from fairly competing with NMB.

174.   NMB has engaged in such acts or omissions maliciously and for the sole purpose of inflicting harm on PRMG, or to benefit itself at the expense of PRMG.

175.   As a result, PRMG has suffered and will continue to suffer injury, damages, and irreparable harm.

47

**WHEREFORE**, Plaintiff Paramount Residential Mortgage Group, Inc., respectfully requests judgment in its favor and against Defendant Nationwide Mortgage Bankers, Inc. on Count Eleven; an award of damages for actual loss; an award of compensatory damages, economic damages and injunctive relief or other equitable relief; attorneys' fees and costs; and any other award or relief that the Court deems appropriate.

## COUNT TWELVE
### CIVIL CONSPIRACY

176.    PRMG repeats and restates each and every allegation set forth above as if the same were fully set forth at length herein.

177.    NMB and the Former PRMG Employees conspired and agreed to engage in the unlawful and tortious conduct described herein, deliberately engaged in such conduct in furtherance of their unlawful plans and schemes, acted on behalf of one another at all relevant times, intentionally and/or knowingly accepted the illicit benefits of the conspiracy, and intentionally and/or knowingly participated in, profited from, and/or ratified the misconduct of one another.

178.    NMB is liable for the conduct of the Former PRMG Employees and any other participants in the conspiracy.

179.    As a result of NMB's conduct, PRMG has suffered and will continue to suffer injury, damages, and irreparable harm.

**WHEREFORE**, Plaintiff Paramount Residential Mortgage Group, Inc., respectfully requests judgment in its favor and against Defendant Nationwide Mortgage

FP 44441864.2

Bankers, Inc. on Count Twelve; an award of damages for actual loss; an award of compensatory damages, economic damages and injunctive relief or other equitable relief; attorneys' fees and costs; and any other award or relief that the Court deems appropriate.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff Paramount Residential Mortgage Group, Inc., being without adequate remedy at law, and being threatened with the continuance of irreparable injury, demands judgment in its favor and against NMB for the following relief:

A.     A permanent injunction, enjoining NMB, directly or indirectly, and whether alone or in concert with others, from:

      (i)     soliciting, diverting away, or attempting to solicit or divert away any PRMG customer; and

      (ii)    soliciting any PRMG employee to leave employment with PRMG or to act in any way in a manner contrary to PRMG's interests or such employee's duty of loyalty to PRMG; and

      (iii)   retaining, using, possessing, disclosing to any person, or facilitating the use of or assisting others to use, any PRMG data trade secrets, and confidential information as described herein.

B.     An award of compensatory and consequential damages, in an amount to be determined at trial, incurred by PRMG as a result of the actions of NMB; and

C.     An accounting and disgorgement of any profits earned by NMB as a result of its unlawful activities; and

D.  Punitive damages against NMB; and

E.  Costs and disbursements of this action, including reasonable attorney's fees and expenses; and

F.  Costs and fees incurred to investigate and address the harm and damage resulting from the unauthorized access of PRMG's computers and related information technology systems; and

G.  Such other and further relief as this Court may deem equitable and just.

## JURY DEMAND

PRMG demands a jury trial on all issues in this action.

Respectfully submitted by:

Date: July 20, 2022

FISHER & PHILLIPS LLP
BRENT A. COSSROW, ESQUIRE
EDWARD G. WINSMAN, ESQUIRE
Two Logan Square, 12th Floor
100 N. 18th Street
Philadelphia, PA 19103
Telephone: (610) 230-2150
Fax: (610) 230-2151
bcossrow@fisherphillips.com
ewinsman@fisherphillips.com

FP 44441864.2