RIMÔN LAW
www.rimonlaw.com

March 1, 2024

**VIA ECF**

Hon. Rukhsanah L. Singh
United States Magistrate Judge
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street, 7W
Trenton, New Jersey 08608

    Re:    *Paramount Residential Mortgage Group, Inc. v. Nationwide Mortgage Bankers, Inc.* D.N.J., Case No. 3:22-cv-04656

           *Response to Plaintiff's Discovery Dispute Letter No. 4*

Dear Judge Singh:

Pursuant to the Court's Order dated February 2, 2024 (ECF No. 52), Defendant and Counterclaim Plaintiff Nationwide Mortgage Bankers, Inc. submits this response to PRMG's Discovery Dispute Letter No. 4 which surprisingly presents deficiencies that NMB has asserted with PRMG's discovery responses. This appears to be a transparent effort to seek a chance to state it's position on these issues twice. Nonetheless, NMB will respond here to address PRMG's contentions even though those issues were also addressed in NMB's discovery dispute letter.

**1.    PRMG Has Systematically Blocked NMB's Efforts to Depose Key Witnesses and PRMG Cannot Dictate the Order of Discovery.**

On November 20, 2023, PRMG served NMB with a six page letter explaining its position that "PRMG is not refusing to produce these witnesses, and this is not PRMG's position. Rather, it is PRMG's position that the noticed depositions should not occur now, or in the near future, for the reasons that follow" going on to state that the depositions should be stayed

March 1, 2024

pending the outcome of PRMG's Motion to Dismiss NMB's counterclaims and because PRMG is prejudiced because NMB is seeking to take the depositions after asking for extensions to respond to unrelated written discovery requests from PRMG.

As an initial matter, such "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986). Moreover, despite PRMG's assertions to the contrary, the depositions sought by NMB are not only relevant to NMB's counterclaims, they are also directly relevant to PRMG's claims and NMB's defenses to those claims. Indeed, Steve Levine was included in PRMG's initial disclosures as someone with knowledge to support PRMG's claims in this litigation. Paul Rozo communicated with the Former PRMG Employees prior to their departure from PRMG about their departure from PRMG, and therefore possesses knowledge that is directly relevant to PRMG's claims and NMB's defenses in this case.

Moreover, the assertion by PRMG that "PRMG's Motion to Dismiss NMB's Counterclaims addresses a purely legal issue whether the unfair competition claim exists at all …, which means that as a matter of law, the discovery sought by the proposed subpoenas could not have any impact on the Court's disposition of the Motion or NMB's opposition arguments" and therefore there would be no harm or prejudice to NMB's opposition to PRMG's Motion to Dismiss NMB's Counterclaims by staying the subpoenas is confusing. NMB is not seeking this discovery for the purpose of opposing PRMG's Motion to Dismiss. It is seeking this discovery for the purpose of defending itself against the claims brought by PRMG in this action and in prosecuting its counterclaims.

In addition, as the Court is aware, PRMG has sought an extraordinary amount of discovery in this case by noticing subpoenas of 41 Former PRMG Employees and indicating its intent to take more than 50 depositions in this case. As referenced above, PRMG also sent a

March 1, 2024

letter on December 1, 2023 identifying 34 specific witnesses that it wishes to depose now and made clear that there may still be additional witnesses who it will seek to depose.  NMB is entitled to take discovery to support its position that such extensive discovery is not proportional to this case, especially in light of the fact that in response to a request for a statement of damages pursuant to Local Rue 8.1, PRMG indicated that it is claiming a "minimum of $3,910,870.00 in damages" without providing any detailed support for how it arrived at such a number.

PRMG is also taking the position that the depositions of its witnesses should not move forward in the "near future", despite seeking at least 34 depositions itself because NMB is seeking to take these depositions after asking PRMG for extensions of time to respond to written discovery in this case, and this somehow prejudices PRMG because it is "unfair and lack [sic] good faith for Nationwide to delay Nationwide's production of its responses and documents that Nationwide has promised for literally months, only to insist that PRMG witnesses appear for their depositions with the benefit of disclosures that NMB would have been required to make long ago absent PRMG's cooperation and willingness to extend deadlines."  While a thorough review of the history of discovery in this matter makes clear that both sides have cooperatively requested and received extensions as noted in the parties most recent joint status report, the number of extensions is immaterial.  PRMG is seeking to delay NMB from taking depositions of key witnesses in this matter until the completion of written discovery despite the fact that the Federal Rules of Civil Procedure and case law make clear that there is no order to discovery. Fed. R. Civ. P. 26(d) ("[M]ethods of discovery may be used in any sequence, and the fact that a party is conducting discovery, whether by deposition or otherwise, shall not operate to delay any other party's discovery."); Gerald Chamales Corp. v. Oki Data Ams., Inc., 247 F.R.D. 453, 454 (D.N.J. 2007) ("Defendants' request for a protective order is decided against the backdrop that

March 1, 2024

there is no requirement that discovery must be stayed pending a decision on a party's motion for summary judgment. See, e.g., Fed. R. Civ. P. 26(e)('methods of discovery may be used in any sequence'). Therefore, absent a court Order Plaintiff has the right to take the requested depositions pursuant to the applicable Rules of Civil Procedure."). PRMG simply is not entitled to require NMB to conduct its discovery in the order or manner in which PRMG finds most preferable and clearly wishes to obtain discovery from NMB without permitting NMB the opportunity to either challenge PRMG's claims or gather evidence to support its counterclaims. Indeed, it is a remarkable proposition to suggest that PRMG's witnesses cannot be deposed to identify what they know because a different party may have additional and/or different information that has yet to be adduced in discovery.

As NMB indicated to PRMG's counsel, NMB is happy to re-notice the depositions for mutually agreeable dates in the near future but PRMG has not offered any such dates, and cannot show that there is good cause for these depositions to be delayed until PRMG's pending Motion to Dismiss is decided or until after the parties have completed written discovery as that would severely prejudice NMB's ability to take crucial discovery to which it is clearly entitled in this case.

**2.   NMB Will Be Prejudiced If It Is Not Allowed to Take Necessary Third Party Discovery.**

PRMG is also effectively seeking a stay of third party discovery in this case pending resolution of PRMG's Motion to Dismiss NMB's counterclaims. If this issue is not resolved between the parties, NMB will seek leave to compel such third party discovery as it would be severely prejudiced in its ability to prosecute its counterclaims if required to wait until after the Court decides the pending Motion to Dismiss.

March 1, 2024

### A. Courts in this District Disfavor a Stay of Discovery Because of A Pending Motion to Dismiss and Such A Stay Would Prejudice to NMB.

A stay of discovery because of a pending motion to dismiss is generally disfavored in the District of New Jersey absent a showing of other good cause to stay discovery. *Chamales Corp. v. Oki Data Ams., Inc.*, 247 F.R.D. 453, 454 (D.N.J. 2007) ("it is well settled that the mere filing of a dispositive motion does not constitute good cause for the issuance of a discovery stay"). It is NMB's position that PRMG has not, and cannot, set forth any good cause for the Court to issue a stay of discovery as it pertains to the third-party subpoenas issued by NMB, or on any other discovery.

PRMG argues that NMB counterclaims are "tenuousness" in support of its dispute to delay NMB in taking necessary third party discovery to prosecute its claims in this action. Of course, making such a claim puts the cart before the horse because NMB is clearly entitled to gather evidence to support its counterclaims. Courts in this District have rejected this as a basis to order a stay of discovery. *See Gerald Chamales Corp.*, 247 F.R.D. at 454 ("In the absence of a clear and unmistakable result, this Court does not believe the issuance of a protective order should depend upon its prediction of how the District Judge will decide defendants' dispositive motion.").

Moreover, discovery in this case is currently set to close on May 31, 2024. In this District, it can frequently take several months or more to decide dispositive motions like the pending Motion to Dismiss that was filed by PRMG. Indeed, the Motion to Dismiss filed by NMB at the outset of this litigation took approximately seven months to be decided. If the Court were to adopt PRMG's proposal of not permitting discovery on the counterclaims until after a decision on the pending motion to dismiss, discovery on those claims might not begin until after

March 1, 2024

discovery in this matter is currently set to conclude in six months. Such an outcome would be extraordinarily inefficient and incredibly prejudicial to NMB.

**B.     The Third Party Discovery Being Sought Is Neither Burdensome Nor Harassing; But Rather, Directly Relevant to NMB's Counterclaims And Will Not Result in "Ancillary Litigation in Multiple Jurisdictions."**

NMB also finds unfounded PRMG's assertion below that "NMB has not even attempted to obtain this information from PRMG before embarking on this costly fishing expedition …" and there is simply no basis to require that NMB seek PRMG's records of when and how these employees worked when NMB contends PRMG is not paying those employees correctly. As with any wage and hour case, evidence from the employees, as opposed to their employer, is highly relevant to whether they were paid appropriately. To conclude otherwise would be to permit PRMG to simply state that those employees were paid appropriately and thus end the inquiry into NMB's counterclaims. It is also confounding that PRMG simultaneously contends that these subpoenas are a "fishing expedition" while acknowledging in its November 22, 2023 letter that these subpoenas are relevant to NMB's counterclaims in justifying its attempt to delay service.

Further, the suggestion that NMB has not sought these records from PRMG and should wait to serve subpoenas is belied by the fact that PRMG has failed to commit to producing all documents responsive to Request Nos. 23, 24, 26 and 27 of NMB's First Request for the Production of Documents and Things directed to PRMG, all of which pertain, at least in part, to NMB's counterclaims. Any assertion by PRMG that they *have* committed to producing documents in response to these requests is inaccurate, especially given that the parties recently had a meet and confer during which PRMG's counsel agreed to revisit its position regarding its responses to several of these very requests. Thus, it is clear that these subpoenas are not

March 1, 2024

being served for any improper purpose but are simply trying to seek relevant information in the most expedient manner possible.

Finally, the assertion by PRMG that NMB's pursuit of third party discovery is "inappropriate" because it requires non-litigants to expend significant resources and supply data that NMB could more easily obtain from PRMG and will result in "ancillary litigation in multiple jurisdictions" is curious given that PRMG itself served 41 third-party subpoenas on the Former PRMG Employees in various jurisdictions without first waiting for similar responsive discovery from NMB or raising any jurisdictional issue.  Indeed, as PRMG cites below, many district courts have recognized that in appropriate circumstances the judge presiding over the case where the action is pending has the authority to issue orders to insure a uniform and orderly discovery process which would alleviate any concern about so called ancillary litigation in other jurisdictions.  The Committee Notes on the 2013 amendments to Rule 45 also make clear that "it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions" and suggest that Judges in compliance Districts may consult with the Judge in the issuing Court to alleviate any such concerns.

    **C.**    **PRMG's Assertion That NMB is Attempting to "Rush Discovery" and Engage in "Dilatory Tactics" is Unfounded.**

PRMG's assertion that NMB is attempting to "game the discovery process" and "change[] its tactics" because it served third-party discovery necessary to prosecute its counterclaims shortly after the close of briefing on PRMG's Motion to Dismiss NMB's counterclaims is perplexing, to say the least.

March 1, 2024

For one, NMB is not attempting to "rush discovery." Indeed, NMB first sought to obtain relevant[1] third-party discovery to support its counterclaims in this case approximately six months before the discovery period is set to close, which is entirely reasonable, especially in a case like this where PRMG has indicated they *initially* intend to take at least 34 depositions, and intend to take approximately 50 depositions in total. Moreover, PRMG is claiming it would create an undue burden and unnecessary expense for it to have to prepare witnesses to address questions regarding NMB's counterclaims, but the third-party discovery sought by NMB is not limited to its counterclaims. It also pertains to NMB's defenses against the affirmative claims brought by PRMG. Therefore, the real prejudice would be for NMB to have to prosecute its counterclaims and defend against the affirmative claims brought by PRMG, without being entitled to take the discovery necessary to do so.

PRMG's assertion that NMB is engaging in dilatory tactics is also entirely baseless and not made in good faith. For example, the assertion that NMB has requested "additional time to comply with its written and documentary discovery obligations with no end in sight as to when PRMG will receive full and complete answers to discovery request it issued" is misleading as it suggests that NMB has not yet responded to PRMG's written discovery requests. Indeed, it has, and NMB even supplemented its initial responses based on PRMG's requests. Any assertion otherwise is inaccurate. Moreover, PRMG's continual assertions in its letter that it granted extensions of time NMB requested to respond to discovery are inapposite, entirely unrelated, and completely irrelevant to the issue at hand here, which is, whether NMB is entitled to obtain timely discovery it needs to defend itself in this action and prosecute its counterclaims.

---

[1] Notably, PRMG does not contend that the discovery sought is not relevant to NMB's counterclaims – nor could it.

March 1, 2024

**3.    Conclusion.**

PRMG's efforts to delay NMB from seeking paper discovery on its counterclaims and efforts to delay depositions of its employee-witnesses on its own claims until NMB had responded to paper discovery makes it clear that PRMG wishes to conduct discovery from NMB without permitting NMB the opportunity to either challenge PRMG's claims or gather evidence to support its counterclaims. There is simply no basis to require NMB to conduct its discovery in the order or manner in which PRMG finds most preferable.

                                                        Very truly yours,

                                                        RIMON, P.C.

                                                        Christopher J. Kelly