<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **PARAMOUNT RESIDENTIAL MORTGAGE GROUP, INC.,** | |
| Plaintiff, | Civil Action No. 22-4656 (ZNQ) (RLS) |
| v. | **OPINION** |
| **NATIONWIDE MORTGAGE BANKERS, INC.,** | |
| Defendant. | |

<u>**QURAISHI, District Judge**</u>

**THIS MATTER** comes before the Court upon Plaintiff-Counterclaim Defendant Paramount Residential Mortgage Group, Inc.'s ("Plaintiff") Motion to Dismiss ("Motion", ECF No. 43) Defendant-Counterclaim Plaintiff Nationwide Mortgage Bankers, Inc.'s ("Defendant") Second Amended Counterclaims. (ECF No. 35.) In support of its Motion to Dismiss, Plaintiff filed a Moving Brief. ("Moving Br.", ECF No. 43-1.) Defendant opposed ("Opp'n", ECF No. 47) and Plaintiff replied ("Reply", ECF No. 49).

Having reviewed the parties' submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1, for the reasons set forth below and for good cause appearing, the Court will **GRANT** Plaintiff's Motion to Dismiss and **DISMISS** Defendant's Second Amended Counterclaims (First Claim for Relief) with prejudice.

I.      **<u>BACKGROUND AND PROCEDURAL HISTORY</u>**[1]

Plaintiff initiated the instant action on July 20, 2022 by filing its complaint, which generally alleged damages arising from Defendant's misappropriation of Plaintiff's employees and trade secrets.  (ECF No. 1; *see also id.* ¶ 1.)  On October 3, 2022, Plaintiff filed an amended complaint. (ECF No. 9.)  Defendant filed a motion to dismiss (ECF No. 11), which the Court denied.  (ECF No. 15.)  On June 28, 2023, Defendant filed an answer with three counterclaims, alleging: (1) unfair competition, (2) "abuse of process," and (3) tortious interference with economic advantage or employment contract.  ("First Countercls.", ECF No. 20.)  On July 19, 2023, Defendant filed an amended answer with counterclaims.  ("Am. Countercls.", ECF No. 27.)  The Court subsequently granted leave (ECF No. 36) for Plaintiff to file the operative Second Amended Answer with Counterclaims.  ("SAC", ECF No. 35.)  The SAC alleges only a single counterclaim for unfair competition ("First Claim for Relief").  Plaintiff filed the instant Motion to Dismiss the SAC on October 13, 2023.  (ECF No. 43.)

Plaintiff is a California corporation that provides mortgage products to customers in nearly every state of the country.  (SAC ¶¶ 8–9.)  Plaintiff is in the business of soliciting home mortgage loans and employing "loan officers" with various titles to conduct its business.  (*See id.* ¶ 13.) Defendant is a mortgage company incorporated in Delaware.  (*See id.* ¶ 7.)  Defendant is a "direct competitor" of Plaintiff.  (*Id.* ¶ 12.)  Defendant alleges that Plaintiff's loan officers must be paid minimum wage as well as, when applicable, overtime compensation for hours worked under the Fair Labor Standards Act ("FLSA").[2]     (*Id.* ¶ 18.)     Defendant proffers that Plaintiff's

---

[1] The parties are familiar with the factual and procedural history of this matter and therefore the Court recites only those facts necessary to resolve the instant Motion.

[2] The FLSA requires that employees be compensated in an amount equal to at least the federal minimum wage for all hours worked and overtime compensation of at least one and one-half times the regular rate for any hours worked over 40 hours in a workweek unless they meet one of certain statutory exemptions.  *See* 29 U.S.C. §§ 206–207.

"misclassification" of at least some of its loan officers allows such employees to qualify for the "outside sales exemption" from the FLSA's minimum wage and overtime requirements, even though they do not actually qualify for the exemption.  (*Id.* ¶¶ 4–5, 15 (citing 29 U.S.C. 213(a)(1)), 18.)  To qualify for the outside sales employee exemption, employees must, *inter alia*, be "customarily and regularly engaged away from the employer's place or places of business."  (*Id.* ¶ 16 (citing 29 C.F.R 541.500(a)).)

Defendant alleges that Plaintiff improperly treats some of its loan officers who primarily work in Plaintiff's facilities or their home offices[3] like outside salespeople.  (*Id.* ¶ 4.)  Accordingly, Plaintiff allegedly pays those loan officers on a "purely commission basis" rather than a minimum hourly wage.[4]  (*Id.* ¶¶ 15, 17, 19.)  Those employees are paid less than they would be if they were paid in compliance with the FLSA, thus lowering Plaintiff's operating costs compared to its competitors.  (*See id.* ¶¶ 5, 22–23, 26–27.)  Defendant alleges that Plaintiff's conduct constitutes unfair competition that is "unbecoming of the ethical standards of the business world."[5]  (*Id.* ¶¶ 5, 27, 30.)  The SAC requests an unspecified amount in damages.  (*Id.* ¶ 31.)

---

[3] The SAC points to a U.S. Department of Labor fact sheet which clarifies that "[a]ny fixed site, whether home or office, used by a salesperson as a headquarters or for telephonic solicitation of sales is considered one of the employer's places of business" under the FLSA. *Fact Sheet #17F: Exemption for Outside Sales Employees Under the Fair Labor Standards Act (FLSA)*, U.S. Dep't of Lab. (Sept. 2019), https://www.dol.gov/agencies/whd/fact-sheets/17f-overtime-outside-sales (last visited May 22, 2024); (*see also* SAC ¶ 16 n.1.).  In contrast, to qualify as an exempt outside sales employee, that employee must make sales at "the *customer's* place of business, or, if selling door-to-door, at the *customer's* home."  *See supra Fact Sheet #17F* (emphases added).

[4] According to the SAC, "[c]ommission payments to loan officers are customary in the mortgage industry, so unless a loan officer is exempt under the FLSA they would be paid both commissions and additional wages in the form of hourly compensation."  (SAC ¶ 21.)

[5] Defendant also alleges the following as support for its claim that Plaintiff's violations of the FLSA constitute unfair competition:

> The State of New Jersey's Department of Labor and Workforce Development ("LWD"), the Agency charged with enforcing New Jersey's wage and hour laws, considers the sorts of wage and hour violations alleged in the counterclaims to be unfair competition that harms competitors. . . . LWD's approach specifically focuses on companies [in industries] alleged to have a "history of non-compliance with existing laws and on those whose employees are less likely to file complaints with the Department."

## II.   <u>JURISDICTION</u>

The Court has jurisdiction over the claims alleged in the Complaint and the counterclaim alleged in the SAC under 28 U.S.C. §§ 1331, 1332, and 1367.

## III.   <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a claim "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  On a motion to dismiss for failure to state a claim, the moving party "bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).  District courts conduct a three-part analysis when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).  First, the court "must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)).  Second, the court must accept as true all of the plaintiff's well-pled factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation marks omitted).  In doing so, the court is free to ignore legal conclusions or factually unsupported accusations that merely state, "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Finally, the court must

---

(SAC ¶ 28 (quoting Mark E. Tabakman, *NJDOL's Aggressive Use of Stop Work Orders is Dramatically Altering the Compliance Landscape for Employers*, N.J. L. J. (Feb. 13, 2023), https://www.law.com/njlawjournal/2023/02/13/njdols-aggressive-use-of-stop-work-orders-is-dramatically-altering-the-compliance-landscape-for-employers/) (last visited May 10, 2024); *NJ Department of Labor and Workforce Development Announces Proactive New Approach to Ensuring Workers' Earnings*, Benefits, N.J. Dep't of Lab. & Workforce Dev. (Nov. 29, 2022), https://www.nj.gov/labor/lwdhome/press/2022/20221129_wageandhour.shtml (last visited May 13, 2024).)  According to the SAC, because Plaintiff "has been sued at least seven (7) times in various jurisdictions for violations of the [FLSA] and other state and local laws governing wages," (SAC ¶¶ 6, 29), Plaintiff's employees "are of the type likely to file complaints, consistent with LWD's approach to enforcing unfair competition through wage and hour law violations."  (*Id.* ¶ 29.)

determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). "The defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages*, 926 F.2d at 1409).

Federal Rule of Civil Procedure 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "A plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

The same legal standard applies when reviewing a motion to dismiss counterclaims. *See United States v. Boston Sci. Neuromodulation Corp.*, Civ. No. 11-1210, 2014 WL 4402118, at *2 (D.N.J. 2014) (citing *Cnty of Hudson v. Janiszewski*, 351 F. App'x 662, 667–68 (3d Cir. 2009) ("The standards for a properly pled complaint[ ] by extension apply to counterclaims.") (alteration in original)); *see also Meng v. Du*, Civ. No. 19-18118, 2020 WL 4593273, at *2 (D.N.J. Aug. 11, 2020).

## IV.   <u>DISCUSSION</u>

### A.    THE SAC FAILS TO STATE A CLAIM FOR RELIEF

#### 1.  <u>New Jersey Common Law of Unfair Competition</u>

Defendant asserts its unfair competition counterclaim under New Jersey common law. Although New Jersey's unfair competition law is "flexible and elastic,"[6] it is "not completely boundless." *Duffy v. Charles Schwab & Co., Inc.*, 123 F. Supp. 2d 802, 815 (D.N.J. 2000) (quoting *N.J. Optometric Ass'n v. Hillman–Kohan Eyeglasses, Inc.*, 144 N.J. Super. 411, 427 (Ch. Div. 1976)); *Wellness Publ'g v. Barefoot*, Civ. No. 02–3773, 2008 WL 108889, at *20 (D.N.J. Jan. 9, 2008). "[M]ost cases of unfair competition encompass one of two torts: [(1) misappropriation or] passing off one's goods or services as those of another[7] and [(2)] unprivileged imitation[.]" *Id.* Furthermore, New Jersey courts have recognized a third tort that falls under the common law of unfair competition: tortious interference.[8] *See EP Henry Corp. v. Cambridge Pavers, Inc.*, Civ. No. 17-1538, 2017 WL 4948064, at *6 (D.N.J. Oct. 31, 2017) (citing *Nat'l Auto Div., LLC v.*

---

[6] "[T]he tendency of the law [in this area] has been in the direction of enforcing increasingly higher standards of fairness or commercial morality in trade.'" *Q–Tips, Inc. v. Johnson & Johnson*, 206 F.2d 144, 145 (3d Cir. 1953) (quoting Restatement of Torts Vol. III at 540).

[7] All acts of unfair competition share a "few fundamental elements": unfair competition is a "business tort" that generally "consists of the misappropriation of one's property by another—or property which has some sort of commercial or pecuniary value. The misappropriation usually takes the form of 'palming off' another's goods as your own, although the modus operandi is not essential." *Wellness Publ'g*, 2008 WL 108889, at *20 (quoting *Hillman-Kohan*, 144 N.J. Super. at 427–28); *c.f. Hoffman-La Roche Inc. v. Genpharm Inc.*, 50 F. Supp. 2d 367, 380 (D.N.J. 1999) ("The key to the tort of unfair competition is misappropriation of property of commercial value.").

[8] Some acts that constitute unfair competition have been described as follows:

> either that the means used are dishonest, or that, by imitation of name or device, there is a tendency to create a confusion in the trade, and enable the seller to pass off upon the unwary his goods as those of another, and thereby deceive the purchaser; or that, by false representation, it is intended to mislead the public, and induce them to accept a spurious article in the place of one they have been accustomed to use.

*Duffy*, 123 F. Supp. 2d at 815–16 (quoting *Squeezit Corp. v. Plastic Dispensers*, 31 N.J. Super. 217, 221–22 (App. Div. 1954)).

*Collector's Alliance, Inc.*, Civ. No. A-3178-14T3, 2017 WL 410241, at \*4 (N.J. Super. App. Div. Jan. 31, 2017)).

Therefore, under New Jersey's common law, the tort of unfair competition is, thus far, limited to the following three broad categories of behavior: "(1) the 'passing off' of [another's commercial] goods or services [as one's own]; (2) unprivileged imitation; and (3) tortious interference." *EP Henry*, 2017 WL 4948064, at \*6 (declining to extend New Jersey's common law tort of unfair competition to encompass false advertising); *see also Tris Pharma, Inc. v. UCB Mfg., Inc.*, Civ. No. A-5808-13T3, 2016 WL 4506129, at \*5 (N.J. Super. Ct. App. Div. Aug. 29, 2016) (same).

A party asserting any common law claim for unfair competition, including a counterclaim, must allege two essential elements: (1) "the misappropriation of one's property by another . . . which has some sort of commercial or pecuniary value"; and (2) "bad faith or malicious conduct." *Harish v. Rubinstein*, 602 F. Supp. 3d 696, 703 (D.N.J. 2022) (quoting *Vorhees v. Tolia*, Civ. No. 16-8208, 2020 WL 1272193, at \*11 (D.N.J. Mar. 17, 2020)).

## 2. The SAC Fails to State a Claim for Relief Under New Jersey's Common Law of Unfair Competition

Plaintiff argues that the SAC must be dismissed because its unfair competition claim falls outside the scope of the three categories of unfair competition that are typically recognized under New Jersey law. (Moving Br. at 1, 5–9.) Specifically, Defendant's counterclaim is based solely on illegal employee compensation, which is unrelated to any of the three categories. (*Id.* at 1.) Plaintiff emphasizes that courts are reluctant to recognize unprecedented categories of unfair competition outside of the traditional three, and in fact that the Third Circuit contemplated such a cause of action and rejected it in *dicta* in *Lexington Nat'l Ins. Corp. v. Ranger Ins. Co.*, 326 F.3d

416, 419 n.1 (3d Cir. 2003).  (*Id.* at 5–10.)  Additionally, Plaintiff argues that the SAC fails to adequately allege causation and damages.  (*Id.* at 11–13.)

Defendant insists that its counterclaim is adequately pled because unfair competition under New Jersey law is "not defined by strict elements"—rather, its meaning is flexible so as to adapt to different circumstances with the goal of discouraging misleading or deceptive practices that render competition unfair.  (Opp'n at 4–7.)  Defendant argues that Plaintiff's actions, which Defendant claims violate the FLSA and unfairly and deceptively hinder Defendant's ability to compete against other businesses, present the "perfect circumstance" under which to recognize an unfair competition cause of action.  (*Id.* at 5.)  Defendant contends that the cases relied on by Plaintiff are factually inapposite and disregard the underlying goal of unfair competition claims. (*Id.*)  Additionally, Relying on New Jersey state court decisions, Defendant urges the Court to defer to the LWD's interpretation of certain types of "wage and hour violations" as unfair competition.  (*Id.* at 6–7.)

The Court finds that the SAC fails to state a claim for relief under New Jersey's common law of unfair competition.  First, the Court notes that Defendant's counterclaim based on illegal employee compensation does not fall into any of New Jersey's recognized categories of unfair competition: (1) misappropriation of business information or the "passing off" of goods or services; (2) unprivileged imitation; or (3) tortious interference.[9]  Although these categories are not exhaustive, the same courts that have discussed the "flexible and elastic" nature of unfair competition claims have also noted that all of such claims recognized by federal and New Jersey state courts thus far have certain common characteristics that generally fall into the three

---

[9] The Court further notes that Defendant asserted a counterclaim for tortious interference in its First Counterclaims and Amended Counterclaims.  (*See generally* First Countercls.; Am. Countercls.)  However, in its SAC Defendant withdrew both its tortious interference and abuse of process counterclaims, (*see generally* SAC), leaving only its unfair competition claim for illegal employee compensation remaining.  (*See* Moving Br. at 7.)

categories. *See, e.g.*, *Duffy*, 123 F. Supp. 2d at 815–16; *Wellness Publ'g*, 2008 WL 108889, at *20; *EP Henry*, 2017 WL 4948064, at *6; (*see also* Reply at 4.)[10]  Therefore, these categories provide instructive guidance on the types of claims generally accepted by the courts as viable unfair competition claims.

Moreover, courts have been reluctant to create additional causes of action for unfair competition beyond the traditional three.  "Generally, it is not the province of the federal court to expand or contract the precepts of state law that it must apply."  *EP Henry*, 2017 WL 4948064, at *6.  Indeed, the Third Circuit rejected a plaintiff's attempt to bring an unfair competition claim based on a competitor's alleged attempt to illegally reduce its operating costs via improper calculation and underpayment of taxes.  *Lexington*, 326 F.3d at 419 n.1.  As Plaintiff points out, in *dicta* the *Lexington* court discussed the undesirable consequences of developing a new category of unfair competition claims, including the one at issue in the instant case.  The court stated, in relevant part:

> It should be clear that the implications of this case cannot be cabined.  For example, if a business may assert a valid claim against a competitor for unlawfully reducing its costs by underpaying its taxes *it follows that a business could assert a claim against a competitor predicated upon a theory that it is obtaining an economic advantage by underpaying its employees in violation of minimum wage act or similar laws.* . . . If we hold that Lexington has pled a claim on which relief may be granted we will invite a tidal wave of litigation as businesses find opportunities to meddle in their competitors' affairs.[11]

---

[10] Defendant's suggestion that Plaintiff's reliance on, in part, unpublished opinions, makes Plaintiff's Motion less credible is inapposite.  (*See* Opp'n at 5.)  Plaintiff is not precluded from supporting its argument with unpublished opinions.  In any case, Plaintiff relies on both unpublished *and* published opinions from this district and the Third Circuit.  (*Compare* Moving Br. at 5–9 (citing *EP Henry*, 2017 WL 4948064, at *6; *Tris Pharma*, 2016 WL 4506129, at *5 (unpublished), *with id.* (citing *Harish*, 602 F. Supp. 3d at 703–04; *Lexington*, 326 F.3d at 419 n.1 (3d Cir. 2003) (published).)  Nor is the Court bound by the district court or New Jersey state court cases Defendant cites in its opposition.  (*See, e.g.*, Opp'n at 4 (citing *Duffy*, 97 F. Supp. 2d at 600; Squeezit, 31 N.J. Super. at 221–22).)

[11] The Court is not persuaded by Plaintiff's claim that the Third Circuit in *Lexington* definitively "rejected" the same cause of action based on illegal employee compensation as Defendant asserts here.  (Moving Br. at 8; Reply at 5.) *Lexington* concerned underpayment of taxes, which is distinct from underpayment of employees.  However, *Lexington* is instructive in its *dicta* because it highlights the reluctance of federal courts to recognize additional categories of

*Id.*  In *Lexington*, the Third Circuit appeared wary of attempts to assert a similar type of counterclaim to the one Defendant brings here.  Defendant's attempt to suggest that simply because the boundaries of an unfair competition claim are "flexible," the Court "must" allow a virtually unlimited number of unfair competition claims, (Opp'n at 7), is unsupported by the caselaw, which sets clear boundaries regarding the types of generally accepted unfair competition claims.

Furthermore, as to Defendant's reliance on state court cases in support of its request that the Court defer to the LWD's interpretation of what constitutes unfair competition, the Court is not bound by state court decisions and declines to follow those decisions here.  In addition, as Defendant itself acknowledges, "[f]ederal courts generally defer to a state agency's interpretation of those statutes it is charged with enforcing, but not to its interpretation of federal statutes it is not charged with enforcing."  *City of Bangor v. Citizens Commc'ns Co.*, 532 F.3d 70, 94 (1st Cir. 2008) (citations omitted).  Therefore, the Court owes no deference to a state agency's interpretation of what constitutes an FLSA violation.[12]

Lastly, regardless of whether Defendant's counterclaim falls into any of the three categories, Defendant has failed to plausibly allege the required two elements of any unfair competition claim—that Plaintiff misappropriated Defendant's property which held commercial or pecuniary value, and did so in bad faith.  *See Harish*, 602 F. Supp. 3d at 703.  While some of

unfair competition claims—including the new category Defendant attempts to create here—beyond the traditionally recognized three.  (*See* Reply at 9.)

[12] Even if the Court were required to defer to the LWD's interpretation—which it is not—the Court notes that the LWD's enforcement approach specifically focuses on industries alleged to have a "history of non-compliance with existing laws and on those whose employees are less likely to file complaints with the Department," which the LWD identifies as the commercial laundromat and construction industries, declining to mention the mortgage industry. (SAC ¶ 28 (citations omitted); *accord* Moving Br. at 10).)  Defendant mistakenly claims that because Plaintiff's employees have brought multiple FLSA lawsuits against Plaintiff, these employees "are of the type *likely* to file complaints, consistent with LWD's approach to enforcing unfair competition . . . ."  (SAC ¶¶ 6, 29 (emphasis added).) In fact, the LWD is concerned with employees who are *unlikely* to file complaints.  The alleged multiple FLSA lawsuits by Plaintiff's employees suggest that Plaintiff's employees are *not* the type with which the LWD's enforcement initiatives are concerned.

the SAC's allegations may be construed to imply bad faith or some malicious motive on the part of Plaintiff in mischaracterizing some of its employees as "outside sales employees" under the FLSA,[13] the SAC contains no allegations whatsoever of misappropriation of any commercial property. *See id.* Despite the tendency of courts to enforce "increasingly higher standards of fairness or commercial morality in trade," Defendant does not have free reign to circumvent the pleading requirements of an unfair competition claim. *Q–Tips, Inc.*, 206 F.2d at 145.

Accordingly, the Court will **GRANT** Plaintiff's Motion to Dismiss Defendant's SAC (First Claim for Relief).[14]

## B.     FUTILITY OF AMENDMENT AND DISMISSAL WITH PREJUDICE

This is Plaintiff's third attempt to plead this cause of action. Given the circumstances, the Court next considers whether the present dismissal should be with prejudice. In the interest of justice, the Court provided Plaintiff with a third opportunity, (*see* ECF No. 36), to plausibly allege sufficient facts that would cure the defects in its counterclaims. *See also Velazquez v. Zickerfoose*, Civ. No. 11-2459, 2014 WL 6611058, at *7 (D.N.J. Nov. 21, 2014) (dismissing complaint with prejudice after affording plaintiff three opportunities to perfect pleading); *Donnelly v. Option One Mortg. Corp.*, Civ. No. 11-7019, 2014 WL 1266209, at *18 (D.N.J. Mar. 26, 2014) (same); *Thompson v. Keystone Human Servs. Corp.*, Civ. No. 09-2558, 2012 WL 398619, at *6 (M.D. Pa. Feb. 7, 2012) (denying leave to amend after three chances). Plaintiff has now been afforded multiple opportunities to amend its counterclaims to state a claim for relief and cure the defects therein, but it has been unable to do so. Accordingly, the Court finds that it would be futile to permit further amendments to the SAC. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 112−13

---

[13] Defendant, however, does not attempt to make such an argument. (*See generally* Opp'n.)

[14] Having determined that Defendant's counterclaim cannot succeed based on its failure to state a cause of action under New Jersey common law, the Court does not reach Plaintiff's separate argument that Defendant failed to properly allege facts showing causation and damages. (*See* Moving Br. at 11–13.)

(3d Cir. 2002) (holding that futility of amendment is a proper reason to deny leave to amend). Therefore, Defendant's SAC (First Claim for Relief) will be dismissed with prejudice.

**V.**     **<u>CONCLUSION</u>**

For the reasons stated above, the Court will **GRANT** Plaintiff's Motion to Dismiss.  (ECF No. 43.)   Defendant's SAC (First Claim for Relief) will be dismissed with prejudice.   An appropriate Order will follow.


Date: **May 30, 2024**

<u>s/ Zahid N. Quraishi</u>
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**
